Good morning. First case on our call this morning is agenda number 13 case number 107498 in re Andrew B etc people of the state of Illinois Appley versus Good morning. My name is Teresa Berkey from the Guardianship and Advocacy Commission. We represent Mr. Andrew B. What is discharge? The answer to that question can be found in the Mental Health Code, specifically under Section 1-109. What is admission? The answer to that question can also be found in the Mental Health Code. Admission is found in several sections of the code, each serving a specific purpose. Reflected in the sections is the source of authority to confine an individual. For instance, under Article 3, informal admission, the source of authority to confine an individual comes from their consent. Likewise with voluntary admission, the source of authority to confine the individual comes from their consent. With Article 6, emergency admission, the source of authority to confine the individual and detain them comes from the exercise of the state's powers to confine the individual, parents patriae, and police powers. Would you have the same problem, counsel, if the person was momentarily released? Momentarily released from court? Yeah, momentarily released. I mean, you're saying that, go ahead, you were going to mention. And also under Article 7, that's the same powers that are exercised by the state. When an individual is brought to court, we know of one thing, and that is a facility does not want to release them. So the options that the court has is to either discharge the individual or have them committed. In the event that they are to be committed, of course there should be a dispositional evaluation prepared by the state. If they are to be discharged, then the individual leaves. And no, I don't have a problem with the individual being discharged by the court. Well, what in Section 601 and 611 read together does not allow someone at any time to file a petition, a varying that a person is in danger and in need of admission? 601 outlines what should be contained in the petition. And it's the guide for other sections of the code to fill out petitions, Section 813, Section Article 4. They all go to 601 as far as what the petition should contain. Article 6 or Section 611 is a limitation on an actual emergency admission by petition. And that limitation is that that petition must be filed within 24 hours of the admission. And there's no exception in Section 3-611 for an Article 6 petition to be filed within 24 hours. The appellate court here has created a new rule, and that is that there is a petition that is not subject to an emergency admission. A court order for discharge restarts the admission clock for Section 3-611, and that's not found in 3-611. Notably, Mr. B was not discharged by the court or by the facility, he was discharged by the court, but he was not permitted to leave. So his admission went back to the original admission date, and therefore that petition was not timely filed. Now the state is not without alternatives. The state can proceed under Section 3-607 and ask the court for detention for examination. The state can also proceed under Article 7 with a petition and ask for examination under that section of the code. In addition to creating a new type of admission, the court has also created a new type of commitment. And that is kind of a de facto commitment where the individual is brought to court, there may be errors in the petition, and it may be procedural errors that are, the procedures are designed to protect the individual. The court, the state can merely dismiss that petition and refile. And this can happen repeatedly, as it did in this case. And that creates kind of a de facto commitment because the individual is confined without a court hearing and without a court order for commitment. In this case, Mr. B was held on four consecutive petitions for 79 days. An order for commitment can be for up to 90 days. So he had almost reached a full order of commitment without a court order for commitment and without a court hearing. Now, detention under Article 6 contemplates physical entry into the facility. Under 602, the petition must be accompanied by a certificate that was completed not more than 72 hours prior to admission. Under 605, the section discusses how to bring a person into custody and transport them to a facility. Under 606, the code provides that a peace officer can take the person into custody. To a facility and then complete the petition. Under 607, the court can order detention and bring the person into custody for the purpose of evaluation. When filing a petition under Article 7 as the second petition after the dismissal of the first, that is in accordance with Shaw. With Shirley, with Reed, with Nancy A., and with Helen S. The only court that does not agree with that is the second district in this case in that they believe filing under Article 6 is permissible. We disagree with that and we would ask the court to reverse the appellate court's decision in this matter. Thank you. May it please the court, counsel. I am Assistant Attorney General Richard Huzzack, counsel for the people of the state of Illinois in this case, and I urge the court to affirm the well-reasoned decision of the appellate court in this case. That decision held that where a petition for involuntary commitment under Article 6 of the Mental Health and Developmental Disabilities Code complies with all of the provisions of that article. A judgment based upon a trial and evidence supporting the petition is not invalidated by the sole reason that the proceeding was voluntary dismissal of an earlier proceeding resulting in a discharge order, but before the discharge order was fully implemented by the physical release of the respondent. The court carefully looked at the relevant code provisions. This is an issue of statutory construction. And we recommend the reasoning of the court in this case, and we disagree that that reasoning is an outlier or incomplete. We are consistent with the decisions of the appellate courts of other districts. Although the issue before this court is not, you know, toting up how many decisions there were on each side of these issues, our position is that there is a conflict. The Fifth District has, in fact, disagreed with the Second District in this case. But we believe that the Second District's decision is, in fact, in line with prior decisions of that same court on similar but not identical issues as well as decisions of the Fourth District. Mr. Hosek, is there any remedy for a patient who has been ordered discharged by the court but has not actually physically been discharged? Is there a remedy for them? And if so, what is it? If there is no superseding event, as we argue would be valid in this case with the commencement of a new involuntary commitment petition, and the facility unlawfully continues to detain a person despite their duty to discharge, we don't dispute the definition of discharge under the code, then either a habeas proceeding could be brought. There is the possibility of a civil proceeding for false imprisonment. The courts are not without tools to remedy and even punish improper violations of a discharge order that are attendant to a discharge order. There is a dismissal of a case, whether it's voluntary or involuntary. The tougher question here, though, of the two arguments raised by the respondent in this case has to do with whether an Article VI petition, which is otherwise in compliance with all the requirements of that article, does not operate as a superseding event that then authorizes detention after the prior authority for confinement and detention. The state's position is that the commencement of a new article VI proceeding can be valid if the order of discharge has expired pursuant to an earlier proceeding. Their position is that, although I don't find any language to that effect in Article VI, and I also don't read the definition of discharge as carrying with it that additional gloss or requirement of immunity against the commencement of a new proceeding, but the state's position is that the commencement of a new Article VI proceeding can be valid if the order of discharge has expired pursuant to an earlier proceeding. I think it implements... How many times can this be repeated? The code itself does not impose any limits. Our position, however, is that the respondent's position in this case is really overkill. What they're trying to say is that the evil that needs to be addressed is that our interpretation of the code opens the door to abuse. And I would candidly say the court needs to address that possibility. Certainly there's a presumption of good faith by public officials, but that doesn't mean that nobody ever does anything improper or wrong. And so what we would say is to the court that it is important to protect against abuse, but not abuse. But not adopt some one-size-fits-all rule that says for any discharge order, regardless of the circumstances behind it, you can never have a new proceeding commenced under Article VI unless the person has been fully physically released from the facility. And so we think that position is overbroad and under-inclusive at the same time. Counselor suggested there were other alternatives that you might have at that time to prevent that. Well, the alternative she provides in her argument here is the suggestion that an order could be obtained under Section 3607 of Article VI. And I want to clarify, if I may, briefly, that Article VI is unique because it authorizes a one-day ex parte involuntary confinement of somebody before anything is filed in court and without any court scrutiny. It's an unusual proceeding and it's limited to emergency circumstances. And there's a necessity for that provision, as the legislature anticipated, and this case, I think, illustrates that type of emergency situation. This person was not just a paranoid schizophrenic, but had a physical malady where he would drink excessive quantities of water to the point that his blood wasn't even able to hold oxygen and he would pass out and die unless he was under supervision and treatment and came close to doing that. They point to Section 3607 of the code, but that specifically says that the court can order temporary detention and examination as a result of personal observation and testimony in open court. Well, that's a very narrow and limited window of opportunity to commence a detention and confinement when that may be therapeutically and medically necessary, because you're not always going to have testimony in open court to justify that type of order. We submit that Article VI itself contains all the provisions necessary to comply with the right of the state to have an authorized detention pursuant to that provision. Mr. Hussock, is it an oversimplification of opposing counsel's position that she's looking for a momentary release of the person from the facility and then be in a position to restrain the same person again who may be a danger to himself and others? It may be a bit of an oversimplification. I'm not exactly sure what rule they embrace here. Their reply brief says that a momentary release is not enough. It has to be a full physical release. But I'm not sure how far that goes. Is it, you know, 20 seconds, 45 seconds? Is it 100 yards? You know, if in fact their position is that doing that is sufficient to satisfy their interpretation of the claim to discharge definition under the code and that a new proceeding thereafter may be commenced, it, I think, reinforces my point that their remedy for potentially vexatious or abusive refilings of cases, essentially bad faith, doesn't really solve the problem, because if that's the rule, then nothing would prevent a theoretical bad faith prosecutor in a facility from just letting the person leave for 100 yards or whatever definition they want the court to adopt and then bring him back in. I believe that that would neither be therapeutically beneficial nor consistent with the spirit and purpose of the code. But I want to emphasize that we have said that the court has to retain the power and courts have that power to prevent officers of the court and people before the court from engaging in vexatious and abusive refilings of these proceedings if it appears that doing so is designed to circumvent the careful protections for liberty interests of respondents. And we don't want to diminish the importance of those, but that's a goal that's joined with the other goal of the code, which is to protect the safety of the public and to protect the safety of these individuals when the elements of the statute have been met. And so we would urge that this power that the courts retain, which is similar to the ability to refuse the repetitive exercise of a naliprasakhi in criminal cases, is one that should be sensitive to the circumstances of the individual cases in which the court is presented with a type of problem. There's a full spectrum of circumstances in which dismissal orders could be entered. It could be after a judgment, after a trial on the merits, and after a judgment, mental condition or propensity to be dangerous to himself or others, or you could have a single one-time misstep for a procedural mistake. And I guess the position of the respondent in this case is that a single misstep, however innocent, nullifies the ability of the state to exercise its powers under Article VI until there has been this process of a single one-time misstep. It's a process of escorting the person outside the facility and then at that moment being able to commence a new proceeding. That doesn't seem to fulfill the purpose that they're trying to accomplish here, which is preventing the type of vexatious or bad faith misuse of these powers under Article VI. And it's really overkill, because at the same time, it prevents those situations in which the evidence will show, as in this case it did, that there is a basis for involuntary detention. I think the evidence was compelling here. It would prevent the commencement of that proceeding for some artificial time period when detention is justified. The respondent also did make a second argument with respect to the definition of admission under the Code, and they invoke Section 3611 of the Code. Here the argument is not that the person was admitted, but that it was filed too late. And there is that provision that says that you have to file the petition within 24 hours after a person is admitted, after their admission under this article, meaning under Article VI. And they read the word admission, in the phrase admission under this article, to mean physical entry into the facility from first being outside. And it is our observation that that is not the proper and correct interpretation of that language as a matter of statutory interpretation. The word admission is used in multiple places in the Code, and it does not always mean physical entry. In fact, the expression subject to involuntary admission, which is at the core of the Code's authority for detaining somebody, refers to the status of being subject to admission, basically from outside the facility to being inside the facility. And in fact, Article VI contemplates situations in which somebody would already be in the facility, and they would go from a voluntary admission to an involuntary admission. This was a somewhat similar circumstance. The person was in on an informal admission, which is slightly different from a voluntary admission, and then sought, requested to leave, and a petition was delivered to the facility director urging that the person was subject to involuntary admission and needed to be detained on an emergency basis. And in that context, it is clear that admission does not mean going from outside the facility to being inside the facility. It means essentially being subject to authorized detention due to compliance with all of the regulations. There was, I think, a great concern in some of the cases that the circuit courts have, on occasion, cut corners, and they have disregarded some of the mandatory requirements of the Code. And there has been a culture of less than careful compliance with the Code's provisions, which are quite extensive, shorter than the tax code, perhaps. And there has been a culture of less than careful compliance with the Code's provisions. We do not urge the Court to disregard in any respect the need for full compliance with those provisions, many of which have specific deadlines and state that if a deadline is met, then the respondent shall be released forthwith. But that is not this case. This is a case in which there is an unusual situation where the Code language, I think, is susceptible to different possible interpretations or plausible interpretations. But then the question before the Court is, what did the legislature mean? Did they intend that if there is for any reason a dismissal order, voluntary or involuntary, with an attendant discharge provision, that that provision must be implemented before the powers under the Code can be further implemented by the commencement of a new petition? And we would urge the Court to accept and adopt the interpretation that the legislature did not intend that would use as sort of a rough analogy. And I don't want this to be followed too strictly. But if, for example, somebody were to bring a claim that their good time credits and inmates' good time credits had been miscalculated and that they were entitled to be released because of that miscalculation, and they were to obtain a court order, for example, in a habeas proceeding, that they shall be released. That doesn't give them immunity from detention if before they leave the gates of the detention facility, the facility, they commit another crime that authorizes that detention. The order itself is valid, but it is superseded by circumstances that the law anticipates may justify detention. And we assert that in this case, Article VI provides a similar type of circumstance where if there's compliance with all of its provisions, it authorizes a detention that would essentially supersede the detention facility. And we assert that that public officials can flout it. But if there's compliance with the alternative regiment specified in Article VI, that that satisfies the code. But that the courts retain a power, not this one-size-fits-all rule that you have to step out of the facility before you can be brought back in, but the courts retain the power to prevent an abusive and vexatious refiling of these proceedings, essentially in bad faith. And if the court lacks any sense of how those powers might be exercised, I could venture suggestions, but I think the court is well aware of how to deal with people that misuse the authority that they have under the law. So for those reasons and those set forth in our brief, we urge the court to affirm the appellate court's decision in this case. And unless you have any further questions, I relinquish the rest of my time. Thank you, Counsel. Just to clarify a point, there has been a mention of what to do in the event of a momentary release. Do you follow the personnel and bring them back? When I speak of the state's alternatives, I'm speaking of alternatives to be exercised before the release of the individual. And going under Section 3-607 is not a hardship. The part of Section 3-607 is not a hardship. The parties are there for court. The testimony can take place. The court can enter an order before the release of an individual. Likewise, with an Article 7 petition, the parties are there. The state is there. The petition can be presented to the court. The court can order detainment. And there is no discharge of the individual. There's no chasing the individual down the hallway to bring them back. In this circumstance, would the state be allowed or would they be compelled to produce evidence demonstrating that the defendant or the inmate was a threat to himself or others? That would be part of under Article 7, yes. They would present to the court that information. In this case, the facts appear to be that the patient was in grave personal danger because of his malice. And when that exists, does that buy any leeway on the way these rules ought to be administered? It shouldn't have any impact. The factual issues of the patient's condition shouldn't cause the court to disregard the procedural protections. That's why they're there. And it's to fit in balance between the state's interests and the court's interests. Especially with an Article 7, and the patient is in the facility, and the facility staff are parties to the petition, it is no hardship to bring forth that specific information and inform the court why it's urgent that the individual not be discharged. What does the acceptable discharge look like? What happens? Under your argument, does the inmate simply walk off the street? Walk out the door? Be discharged? Leave? Go home? If the individual is ordered discharged by the court, I would hope that the facility would make arrangements for transportation, medication follow-up, and follow-ups with a community mental health center to ease that transition. Yes, they do walk out the door and catch the bus quite often. That does happen. And what I'm talking about is prior to that discharge, if that is, if the state is determined not to let that individual go, they should be ever more vigilant to put in place the procedures to prevent that. I would ask the court to reverse the appellate court's decision. Thank you. Case number 107498 will be taken under advisement at this time.